Leo **ELWERT**, Appellant,

v.

**UNITED STATES of America,**
Appellee.

No. 14846.

United States Court of Appeals
Ninth Circuit.

March 22, 1956.

Rehearing Denied April 26, 1956.

S. J. Bischoff, George W. Mead, Portland, Or., for appellant.

H. Brian Holland, Asst. Atty. Gen., Joseph M. Howard, Dickinson Thatcher, Attorneys, Department of Justice, Washington, D. C., C. E. Luckey, U. S. Atty., Portland, Or., Jean G. Guise, Jr., Asst. U. S. Atty., Seattle, Wash., for appellee.

Before DENMAN, Chief Judge, and STEPHENS and CHAMBERS, Circuit Judges.

DENMAN, Chief Judge.

Elwert appeals from his conviction of tax evasion in the United States District Court for the District of Oregon. He

contends that the indictment failed to charge him with a crime, that there is a variance between the indictment and the evidence, that the evidence does not support the conviction and that the District Court erred in giving certain instructions to the jury and in denying others.

Section 145(b) of 26 U.S.C. [now 26 U.S.C. § 7201] provided so far as relevant:

> " * * * any person who willfully attempts in any manner to evade or defeat any tax imposed by this chapter or the payment thereof, shall * * * be guilty of a felony and, upon conviction thereof, be fined not more than $10,000, or imprisoned for not more than five years, or both, together with the costs of prosecution."

Elwert was sentenced to 18 months imprisonment on each of the three counts, the sentences to run concurrently, and fined $1,000 on the first count, $1,000 on the second count and $500 on the third count.

### I. The Indictment.

Elwert contends that the indictment failed to charge him with a crime in any of its three counts. So far as relevant, the indictment charged the crime in the language of Section 145(b). Count One charged that appellant

> "willfully and knowingly attempt-[ed] to defeat and evade a large part of the income tax owing by him to the United States of America for the calendar year 1947, by filing and causing to be filed * * * a false and fraudulent income tax return * * *."

Count Two made a similar charge for the year 1948. Count Three charged that appellant

> "willfully and knowingly attempt-[ed] to evade and defeat the said income tax by * * * failing to make such income tax return * * * and by failing to pay * * * said income tax and by

concealing and attempting to conceal from all proper officers of the United States of America his true and correct gross and net income for said calendar year 1949 * * *."

An indictment meets the requirements of the Fifth Amendment and Rule 7 of the Federal Rules of Criminal Procedure, 18 U.S.C.A., if it charges all the essential elements of the crime clearly enough to enable the defendant to prepare his defense and to plead the judgment in bar to a future prosecution for the same offense. Todorow v. United States, 9 Cir., 1949, 173 F.2d 439, 446–447. The sufficiency of an indictment is tested by practical considerations, and defects not affecting substantial rights are disregarded. See, e. g., Hopper v. United States, 9 Cir., 1943, 142 F.2d 181.

Here Elwert asserts that the indictment was defective in that it failed to allege that he acted with a "specific intent" to defraud the Government. The requirement of such a specific intent resulted from an interpretation of the word "willfully" in Section 145(b) and imposed on the United States a more difficult burden of proof than is normally required in a criminal case. See Bloch v. United States, 9 Cir., 1955, 221 F.2d 786. A number of cases have been decided holding that it is sufficient to indict in the language of Section 145(b). See, e. g., Himmelfarb v. United States, 9 Cir., 175 F.2d 924, certiorari denied 1949, 338 U.S. 860, 70 S.Ct. 103, 94 L. Ed. 527; Capone v. United States, 7 Cir., 56 F.2d 927, certiorari denied 1932, 286 U.S. 553, 52 S.Ct. 503, 76 L.Ed. 1288. However, Elwert points out that they did not specifically consider the question of whether specific intent had to be alleged since this requirement has crystalized only in recent years.

Elwert's contention may have merit, but it need not be here decided since he has failed to show that he was prejudiced by the failure of the indictment to charge he acted with a specific

intent to defraud the United States. At least a week before the trial his attorneys knew that the Government was required to prove that he acted with a specific intent to defraud the United States. If this discovery upset their plan of defense, they were free to move for a continuance. They failed to do so. It is difficult to believe that had the indictment alleged Elwert had acted with such a specific intent the defense would have been aided in any way. One of the major arguments presented at the trial by Elwert was that the underpayment of tax was due to his carelessness and that his actions could be explained by difficulties with his wife rather than a specific intention to evade taxes. This does not constitute reversible error.

Elwert next contends that Count Three of the indictment is defective in that it failed to allege any "willful commission" or "affirmative action" constituting the felony of tax evasion as distinguished from the misdemeanor of failing to observe statutory duties as a taxpayer. Spies v. United States, 1943, 317 U.S. 492, 63 S.Ct. 364, 87 L.Ed. 418. He argues that the charge of "concealing and attempting to conceal * * * his true gross and net income for * * * 1949 * * *" was insufficient. Concealing one's true income could be "mere passive inaction" and only a misdemeanor.

■ However, this court has held that it is sufficient to charge one with attempting to defeat and evade taxes without specifying the means since Section 145(b) condemns evasion "in any manner." Himmelfarb v. United States, 9 Cir., 175 F.2d 924, 936, certiorari denied 1949, 338 U.S. 860, 70 S.Ct. 103, 94 L.Ed. 527. Here allegations of many affirmative acts of concealment were furnished Elwert in a bill of particulars well in advance of trial. There is no reversible error here.

II. Variance.

■ The indictment and bills of particulars all charged that Elwert had understated *his* taxable income and attempted to evade *his* taxes while most of the evidence introduced showed an understatement of *partnership* income. Elwert claims this constitutes a variance calling for a reversal of his conviction.

However, an understatement of partnership income was an understatement of Elwert's income. Such evidence was highly relevant to prove Elwert's evasion of the taxes due. One might conceive a case where the failure of the Government to specify whether they were speaking of partnership income or individual income would prejudice a defendant. However, the record makes it clear that the defense attorneys here were in no way surprised by the failure to denominate items as partnership or individual.[1] The objection is one going only to form.

III. The Sufficiency of the Evidence.

Elwert next argues that the trial court erred in denying his motions for acquittal under F.R.Crim.P. 29 as to each of the counts of the indictment. He claims that the evidence was insufficient to warrant submission of the case to the jury.

■ To convict one of violating Section 145(b) the Government must prove that there was a tax owed to it by the defendant,[2] and that he has done acts of evasion[3] with a specific intent

1. See Goldbaum v. United States, 9 Cir., 1953, 204 F.2d 74, 78, remanded 348 U.S. 905, 75 S.Ct. 311, 99 L.Ed. 710, reaffirmed 9 Cir., 1955, 222 F.2d 360.

2. "A prosecution for **wilful failure to file a return** may be maintained where there is no tax due. But no prosecution for **wilful attempt to evade or defeat a tax** is possible unless there is some tax due." 10 Mertens, Law of Federal Income Taxation § 55.37. See also United States v. Schenck, 2 Cir., 1942, 126 F.2d 702; Gleckman v. United States, 8 Cir., 1935, 80 F.2d 394.

3. Spies v. United States, 1943, 317 U.S. 492, 63 S.Ct. 364, 87 L.Ed. 418.

to defraud the United States.[4] Here there is no question that acts of evasion were done. The issue is whether Elwert owed a tax to the United States and whether he acted for the purpose of evading that tax.

██ Here, as in most tax evasion cases, much of the Government's evidence is circumstantial. The trial judge must grant a motion for acquittal where the evidence of guilt is circumstantial only if, as a matter of law, reasonable minds as triers of fact must be in agreement that reasonable hypothesis other than guilt could be drawn from the evidence.[5] If, under this test, the case was properly submitted to the jury, its decision will be final. Unlike the practice in some circuits,[6] this court applies no special rule to review circumstantial evidence on appeal. As to circumstantial proof of intent see this court's in banc decision in McCoy v. United States, 9 Cir., 169 F.2d 776, certiorari denied 1948, 335 U.S. 898.

(A) Was Any Tax Owed to the United States in 1947, 1948 and 1949?

██ Elwert contends that if the overstatement of his income in 1949 and the deductions to which he was entitled, but did not claim, in the years in question were taken into account, there would be no tax liability for 1947, 1948 and 1949. However, it must be remembered that in a tax evasion case the burden is on the defendant to prove that he had allowable deductions which were not shown in his return once the Government establishes unreported income and allows the deductions claimed by the defendant in his return and others that it can calculate without his assistance.[7]

Elwert urges that the United States' computation of his income for 1949 overstated it by approximately $19,000. If this were true, the unreported income for 1949 could be wiped out, and, because of the carry-back provisions of 26 U.S.C. § 122, the amount of taxable income for 1947 and 1948 could be affected.

Elwert and his wife operated a nursery and a farming business as a partnership. The partnership filed no informational return in 1949 although one was made out for it by its accountant. Elwert filed no individual return for that year either. The United States used the unfiled and unsigned partnership return as a starting point to prove Elwert's unreported individual income for 1949.

Hammond, the accountant who prepared the informational return, testified that he had prepared it from six books listing the receipts of the business. The return stated that the gross receipts of the partnership were $173,319.76 and after deductions the net income was $1,833.32. On cross-examination Hammond conceded that the gross income was overstated by over $19,000 and he could not explain the reason for this.

██ Elwert argues that the jury could not believe that part of Ham-

---

4. Bloch v. United States, 9 Cir., 1955, 221 F.2d 786, certiorari denied, 1956, 350 U.S. 948, 76 S.Ct. 323.

5. Charles v. United States, 9 Cir., 1954, 215 F.2d 831, 833–834; Bateman v. United States, 9 Cir., 1954, 212 F.2d 61, 70–71; Schino v. United States, 9 Cir., 209 F.2d 67, 72, certiorari denied 1954, 347 U.S. 937, 74 S.Ct. 627, 98 L.Ed. 1087; Remmer v. United States, 9 Cir., 1953, 205 F.2d 277, 287–288, reversed on other grounds, 1954, 347 U.S. 227, 74 S.Ct. 450, 98 L.Ed. 654; Stoppelli v. United States, 9 Cir., 183 F.2d 391, 393, certiorari denied, 1950, 340 U.S. 864, 71 S.Ct. 88, 95 L.Ed. 631.

6. See cases collected in Note, Sufficiency of Circumstantial Evidence in a Criminal Case, 55 Col.L.Rev. 549, 550–551 (1955).

7. United States v. Bender, 7 Cir., 218 F. 2d 869, certiorari denied, 1955, 349 U.S. 920, 75 S.Ct. 660, 99 L.Ed. 1253; United States v. Stayback, 3 Cir., 1954, 212 F. 2d 313, certiorari denied, 1955, 348 U.S. 911, 75 S.Ct. 289, 99 L.Ed. 714; Clark v. United States, 8 Cir., 1954, 211 F.2d 100, certiorari denied, 1955, 348 U.S. 911, 75 S.Ct. 289, 99 L.Ed. 714. Cf. Gendelman v. United States, 9 Cir., 1951, 191 F.2d 993.

mond's testimony which helped the Government's case and fail to credit that part favorable to him. We do not agree. The jury may conclude a witness is not telling the truth as to one point, is mistaken as to another, but is truthful and accurate as to a third.[8]

The jury could have given Hammond's statement that the partnership gross receipts indicated on the informational return was over $19,000 more than the total of the six receipt books little credit or disbelieved it entirely. Although called as a Government witness, Hammond was employed as the partnership accountant at the time of the trial. On redirect examination he conceded that he had never attempted personally to reconcile the tax return with the receipt books but had been told it could not be done by an auditor hired by Elwert for the purposes of this trial. Elwert's attorneys failed to call the auditor. Moreover, Hammond also conceded that the items of expense deducted in the 1949 partnership return were probably excessive. The jury did not have to give effect to this $19,000 item.

In each of the three years in question no deduction was taken for payments made in cash to itinerant laborers who worked in the harvest of various crops and in the nursery business. From the testimony of prosecution and defense witnesses, Elwert's attorneys have compiled the following as a minimum deduction which should have been taken:

Nursery Workers (Spring work
and Harvesting):
65 days x. 25 men at $5.00
per day ............... $8,125.00
Nut Harvest:
30 days x. 50 men at $5.00
per day ............... $7,500.00
Cherry Harvest:
20 days x. 20 men at $5.00
per day ............... $2,000.00
Prune Harvest:
30 days x. 25 men at $5.00
per day ............... $3,750.00

Total annual minimum expenditure in cash for itinerant labor ......... $21,375.00

For this deduction to reduce or eliminate the unreported income for the years in question Elwert's attorneys must identify the *source* of the cash used to pay the itinerant workers. The United States showed that two types of gross receipts were not reported by the partnership. Certain checks were deposited in bank accounts or cashed by Elwert and not disclosed to the accountants preparing the tax returns. The Government introduced the particular checks so treated and thereby established an amount of unreported income. However, the Government also established that there were substantial sums of cash received in the course of the business which were also unreported. Naturally, if the payments to the itinerant laborers were made from the cash receipts only, the deduction would not affect the understatement of income from the unreported checks.

One of Elwert's friends, A. D. Schmidt, testified that he had cashed a number of the checks in question during 1947, and Elwert used the cash to pay itinerant help. Assuming that the jury believed Schmidt, although there is no showing how he knew for what purpose Elwert used the cash, this testimony connects only part of the payments to itinerant laborers with the checks for the year 1947. With the burden of establishing deductions on the defendant, the jury was free to infer that the payments to laborers, or at least a large part of them, came from the unreported cash receipts or disbelieve Elwert's witnesses as to the number of men, the days worked or the amount of their compensation.

---

8. See, e. g., United States v. Palese, 3 Cir., 1943, 133 F.2d 600, 603; Kowalchuk v. United States, 6 Cir., 1949, 176 F.2d 873, 876. Cf. Bridges v. United States, 9 Cir., 1952, 199 F.2d 811, 832, reversed on other grounds, 1953, 346 U.S. 209, 73 S.Ct. 1055, 97 L.Ed. 1557.

The jury, for the same reasons, was likewise free to give no effect to the other deductions asserted to have been business expenses paid in cash.

The consideration of these particular deductions makes it unnecessary to consider the evidence concerning the other asserted deductions. Even allowing them, there would remain substantial unreported income and unpaid tax owing to the United States.

 This issue was properly submitted to the jury.

(B) Did Elwert Specifically Intend to Evade His Taxes?

 It is asserted that there was insufficient evidence tending to show that Elwert specifically intended to defeat or evade the payments of his taxes to justify the submission of the case to the jury. Evidence of intent necessarily must be circumstantial. The question is whether this Court can say that reasonable minds as triers of fact must have been in agreement that reasonable hypothesis other than that of an intent to evade taxes could have been drawn from the evidence in the case.

The United States offered the following evidence to show that Elwert intended to evade his income taxes: He was running a large business but kept no records of cash transactions. In 1947 he opened and closed two bank accounts in such a manner as to conceal their existence. His banking was done by a friend while he waited a block away at a brokerage house. The unreported income treated in this fashion exceeded $20,000.

Cook, the accountant who prepared the income tax returns for the partnership and for Elwert from 1943 until 1948, was furnished only the bank statements and checks from the two main partnership accounts at the Sherwood and Tigard banks. There were no transfers between these accounts and the two concealed accounts to put Cook on notice of their existence, and Elwert did not inform Cook of the $20,000 in partnership income channeled through them.

Cook had spoken to Elwert many times about keeping adequate records for tax purposes. In 1946 Elwert and the Bureau of Internal Revenue settled a tax deficiency of some size. Cook further testified as follows:

"Q. You didn't mean to say, then, that you did not get any other information from Leo Elwert with regard to income other than the bank statements? A. That is right. In other words, Mr. Mead, after I would accumulate all this information I would call Leo in and I would say, '*Now what else? What other transactions have you had for the year?*' [And it was just like pulling teeth to get the information,] but finally I would get it * * *." [9] [Emphasis added.]

In 1948 Elwert continued to keep no records of cash transactions. He also failed to notify his newly hired tax accountant, Hammond, of at least two transactions of over $25,000.[10]

Elwert opened and closed six bank accounts in 1949, three of which were held under assumed names. Over $15,000 of partnership receipts were involved. Hammond, the accountant, was not notified of these transactions. Elwert failed to file either the partnership informational return or the individual return Hammond had prepared in 1949.

Elwert's defense attempted to show that his failure to keep records was motivated by a farmer's dislike of bookkeeping details. The business had grown rapidly after World War II, but Elwert continued the practices which had been adequate before the expansion.

In 1946 and 1947 Elwert was threatened with an alienation of affections suit which was finally settled. Elwert's

---

9. The portion of the answer in brackets was stricken by the trial judge.

10. There was a conflict in the evidence as to whether Hammond knew of one of these transactions. The jury was free to resolve that conflict against Elwert.

wife closed the partnership bank account on which both partners could draw checks and opened a new account with the partnership funds on which only she could write checks. The relationship between the Elwerts was very strained, and it was necessary for appellant to adopt the methods of concealment in order that he might transact business as he desired. The concealment was from his wife rather than the Treasury Department.

While Elwert may not have established the amount of deductions he failed to take or that they offset the unreported income, it is clear that there were large items of business expense which were not taken as deductions during the years in question. This indicates that Elwert was not "tax conscious," and tends to negate any intention to evade taxes.

In 1948, Elwert filed a suit for divorce in Idaho against his wife, and the decree became final in 1949. The relationship between the Elwerts during this period became more distant, and Elwert was afraid that his wife would seek to attach his personal bank account as part of a proceeding for a property settlement in Oregon. A bank official suggested the use of accounts in fictitious names to keep a source of funds available for business operations.

Reasonable hypotheses other than that of an intent to evade taxes can be drawn from the acts of concealment of bank accounts and the failure to keep records. However, a reasonable jury could have concluded that the failure to disclose large cash transactions to the tax accountants after being asked "what other transactions have you had for the year" excluded every reasonable hypothesis but that of an intent to evade taxes. If this was the motive for Elwert's actions, or even part of the motive,[11] in 1947 or 1948, it was reasonable to infer it was at least a partial motive for the conduct in 1949.

 The motion to acquit was properly denied.

### III. The Jury Instructions.

Elwert contends that the District Court erred in giving certain jury instructions and refusing to give others. The instructions given certainly were not a model for future tax evasion cases, but the question is whether, taken as a whole, they fairly informed the jury of the standards to apply to the evidence.

The first objection concerns the inferences which the jury was allowed to draw from Elwert's failure to keep records of his business transactions. The District Court instructed that

"Every person subject to income tax, except persons whose gross incomes consist solely of salaries or wages for personal services, or arise solely from farming, is required to keep such permanent books of account or records, including inventories, as are sufficient to establish the amount of the gross income and the deductions, credits, and other matters required to be shown in any income tax returns."

The District Court refused to give the following instruction:

"Evidence has been introduced to the effect that the books and records maintained by the Tualatin Valley Nursery partnership, were incomplete, inadequate, and defective.

"You are instructed that the defendant cannot be convicted of the offenses charged in the indictment merely because the books and records were kept in that manner.

"If you find that the books and records were incomplete and inaccurate and the records were so maintained through carelessness, mistake, or ignorance, and that the

---

11. "If the tax-evasion motive plays any part in such conduct the offense may be made out even though the conduct may also serve other purposes such as concealment of other crime." Spies v. United States, 1943, 317 U.S. 492, 499, 63 S.Ct. 364, 368, 87 L.Ed. 418.

defendant was unaware of the fact that they were so kept, an understatement of the net income in the income tax returns, if any there be, would not constitute a wilfull attempt to evade the payment of tax, and your verdict must be for the defendant."

Elwert argues that the instruction given erroneously informed the jury that they might predicate a finding of an intent to evade tax upon the mere failure to keep records. However, throughout the instructions the District Court stressed that "negligence, carelessness or mistake of a taxpayer in the handling of his accounts or in providing information to be used in the preparing an income tax return * * * is not in itself equivalent to the concealment of income or fraud with intent to evade tax." " * * * [W]illful tax evasion requires an intentional affirmative act as compared to an accidental, inadvertent and passive one."

The instruction asked for was adequately covered in the trial judge's charge, and the instructions taken as a whole negate the objectionable inference which might be drawn from the paragraph quoted from the instructions given.

■ The District Court instructed that:

"Of course, it is not necessary for the prosecution to prove knowledge of the accused that a particular act or failure to act is a violation of law. Everyone is held to know what the law forbids and what the law requires."

This Court held such a presumed intent instruction bad in Bloch v. United States, 9 Cir., 1955, 221 F.2d 786. However, where the instructions later stress that tax evasion is a specific intent crime and clearly inform the jury about that requirement, the presumed intent instruction does not constitute reversible error. Legatos v. United States, 9 Cir.,

1955, 222 F.2d 678. Such is the case here. This was not reversible error.

■ In discussing the elements of the three crimes charged the District Court listed a specific intent to evade taxes only as an element of the crime charged in the third count based on the concealment of income in 1949. Elwert contends that the jury would naturally draw the inference that such an intent was not part of the crimes charged in counts one and two. However, later the District Court made it very clear in the instructions that the specific intent requirement applied to all three counts. There was no error here.

■ The District Court refused the following instruction proposed by the defendant:

"The indictment does not charge that there was any falsity or fraud in the filing of the partnership information returns for the years 1947 and 1948. It only charges that defendant's individual tax returns for those years were filed to evade the payment of a part of his income tax liability."

The District Court completely and clearly spelled out to the jury the relationship between the income of a partnership and that of the individuals composing that partnership. The jury was not misled in this respect.

■ The District Court refused to instruct that

"the burden of proving the defendant guilty of the offenses charged in the indictment never shifts from the Government. The burden is not upon the defendant to prove his innocence. That burden rests upon the plaintiff."

However, it did instruct that the burden of proof was on the Government "to prove the accused guilty beyond a reasonable doubt of every essential element of the offense charged" and "a defendant has the right to rely upon the failure of the prosecution to establish such

proof." The jury was adequately instructed as to this point.

 The District Court refused the following instruction:

"You are instructed that if the defendant had no net income in the tax year of 1949, there would be no tax liability for that year and the failure to file a return for that year would not constitute an offense under Section 145(b) of the Internal Revenue Code, and your verdict must be for the defendant on Count III of the Indictment."

The District Court did instruct that the "first essential element is that there was owing to the Government of the United States by the defendant a substantial income tax for the taxable year of 1949." The court later fully instructed on how to determine whether a substantial tax was due. No more was required.

 The defendant's requested instructions concerning the factors the jury might consider to determine whether Elwert had a specific intent to evade taxes was refused. The requested instructions spelled out specific factors while the instructions given only informed the jury that

"In determining the issue as to intent the jury is entitled to consider any act or acts done or omitted by the accused, and all facts and circumstances in evidence which may aid the determination of the state of mind. You are entitled to consider the motive, if any, of the defendant in connection with the various transactions involved as bearing upon the existence or non-existence of the required specific intent."

It was not necessary for the trial judge to review the evidence relevant to intent as defendant's proposed instruction would have done. The jury was adequately instructed on this point.

The other refused instructions are either covered under the above analysis or do not present substantial questions.

The judgment is affirmed.