Lloyd I. SMALL, Sr.,

v.

UNITED STATES of America.

No. 5316.

United States Court of Appeals First Circuit.

May 22, 1958.

Richard Maguire, Boston, Mass. (John J. Egan and Thomas J. Carens, Boston, Mass., with him on brief), for appellant.

Robert J. Hoffman and Roger B. Champagne, Asst. U. S. Attys., Boston, Mass. (Anthony Julian, U. S. Atty., Boston, Mass, with them on brief), for appellee.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

HARTIGAN, Circuit Judge.

The defendant was found guilty by a jury in the District Court of the United States for the District of Massachusetts on two indictments charging him with violations of Section 145(b) of the Internal Revenue Code of 1939,[1] 52 Stat. 513 (1938), 53 Stat. 62, 26 U.S.C. § 145 (b) (1946). The first indictment, Cr. No. 57–36–A, charged him with willfully and knowingly attempting to evade taxes by filing a false and fraudulent income tax return for the calendar year 1950 for the Broadway Chevrolet Corporation of which he was president and treasurer. The second indictment, Cr. No. 57–37–A, charged him with willful attempt to evade taxes by filing a false and fraudulent joint income tax return for himself and his wife for the calendar year 1950.

The defendant filed on October 31, 1957, a notice of appeal which did not meet the requirements of Fed.R.Crim.P. 37(a) (1), 18 U.S.C. and consequently is dismissed (Appeal No. 5315). On November 4, 1957, the defendant filed a substitute notice of appeal which complied with said rule and conferred jurisdiction upon this court.

The defendant moved for acquittal at the close of the government's case and also at the end of the trial, and the issue before us is whether the evidence, viewed in the light most favorable to the government was sufficient to support a verdict of guilty. Glasser v. United States, 1942, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680.

[1]. "(b) *Failure to collect and pay over tax, or attempt to defeat or evade tax.* Any person required under this chapter to collect, account for, and pay over any tax imposed by this chapter, who willfully fails to collect or truthfully account for and pay over such tax, and any person who willfully attempts in any manner to evade or defeat any tax imposed by this chapter or the payment thereof, shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, be fined not more than $10,000, or imprisoned for not more than five years, or both, together with the costs of prosecution."

There was evidence presented by the government with regard to certain travel and entertainment expenditures made by the defendant purportedly on behalf of the Broadway Chevrolet Corporation which would sustain a finding by the jury that these expenditures were for the defendant's personal benefit and consequently were includable in the defendant's individual return as income as well as not being available as an expense of the corporation to reduce its income. However, the government presented evidence on two other transactions which it contended resulted in unreported taxable income to the defendant and to Broadway Chevrolet. The trial court charged the jury that if it found that the defendant had realized a taxable gain from one of these transactions, namely, the sale of a house, and had intentionally omitted such gain from his return it could find the defendant guilty of tax evasion with regard to his individual return. The other transaction was the deduction by Broadway Chevrolet as a necessary and ordinary business expense approximately $30,000 which it intended to use for the expansion and alteration of its automobile showroom. With regard to this transaction the jury was instructed that it could find the defendant guilty of willful attempt to evade the corporation's tax if it found that this expenditure was not a proper 1-year deductible expense and the defendant realized it was not such an expense.

The basic theory of defendant's appeal is that the government did not present sufficient evidence on these two items for the jury to find the defendant had realized taxable income from these transactions and consequently the jury should not have been allowed to base its finding of guilt solely upon its determination that these transactions did result in a taxable gain which was intentionally not reported by the defendant.

The house, which was a two family type, half of which had been used as a residence by the defendant, was stipulated to have been purchased by the defendant's wife in 1929 for $13,000. It was further proved that the house was sold for $17,500 in 1950 and no mention was made of the transaction on the defendant's individual tax return. A special agent of the Internal Revenue Bureau testified that upon investigation the defendant had admitted there was a substantial difference between the original cost and the selling price of the house but there was no evidence that the defendant had been asked whether there had been any capital improvements to the house from 1929 to 1950 nor was there any evidence presented by the government as to the existence or non-existence of capital improvements.

Defendant presented evidence, which was unrebutted by the government, of substantial capital improvements to the house, including the construction of a garage, installation of an oil burner, playroom, bathroom, concrete driveway, etc. His accounting expert testified that after taking into account the cost of these capital improvements there would have been no gain resulting from the sale of the house in 1950.

Section 111(a) of the Internal Revenue Code of 1939, 26 U.S.C. § 111(a), provides that the gain from the sale of property shall be the excess of the amount realized therefrom over the adjusted basis. Section 113(b) (1) (A) of the Internal Revenue Code, 26 U.S.C. § 113(b) (1) (A) further provides that the adjusted basis shall reflect " * * expenditures, receipts, losses, or other items, properly chargeable to capital account, * * *." .

■ The government has the burden of proving every element of the crime beyond a reasonable doubt. Holland v. United States, 1954, 348 U.S. 121, 138, 75 S.Ct. 127, 99 L.Ed. 150. One of the basic elements of the offense is an understatement of tax, see Elwert v. United States, 9 Cir., 1956, 231 F.2d 928, and a prerequisite to the imposition of a tax is the establishment of taxable income. Here the government has provided evidence tending to prove additional gross income in the amount of $17,500 although the defendant claimed that be-

cause of real estate commissions, etc. the total amount realized was only $16,554.-60. The government has offset this gross income by the subtraction of the original cost of the house contending that the burden is then upon the defendant to prove any additional items which may be applied against the sales price. See Elwert v. United States, supra, 231 F.2d at page 933.

■■ It was suggested by the trial judge that one possible inference to be made from the defendant's failure to report this transaction on his return was that such failure to report was due to the defendant's realization that the net sales price received for his home would exceed his adjusted cost thereby resulting in taxable income. This inference would be applicable with regard to the determination of the defendant's state of mind but a finding of understatement is necessary before the defendant could be found guilty of an attempt to evade his individual tax. Whether or not there was taxable income from the sale of the house is dependent solely on whether the net selling price exceeded the adjusted cost of the house. According to the record no inquiry or investigation was made by the government as to whether this adjusted cost would exceed the original cost. It would seem that in the natural course of events a home owner would expend funds for capital improvements yet the government chose to assume no such expenditures were made. The basis of such an assumption is that if the defendant had made such expenditures he would have reported them in his return. But this assumption may be rebutted by substantial evidence, United States v. Bender, 7 Cir., 1955, 218 F.2d 869, certiorari denied 349 U.S. 920, 75 S.Ct. 660, 99 L.Ed. 1253, and the burden is then on the government to supply evidence from which it could be inferred that either the claimed expenditures were not made or that they were not sufficient to offset the net return to the seller. Such evidence was supplied by the defendant in the instant case through the testimony of his employee who had supervised the installation of these capital improvements and by an independent expert who testified as to their probable cost in the year of installation and it was not rebutted in any manner by the government. The government has thus not borne its burden of proving that the defendant gained taxable income from the sale of his house and consequently the trial court committed error in submitting to the jury the issue of whether or not there was a profit on the house.

The second transaction which resulted in an alleged understatement of income for the Broadway Chevrolet Corporation was the deduction of approximately $30,-965. Of this amount, $7,500 was deducted as legal and auditing expenses and $23,465 as a "maintenance of building expense".

There was uncontested evidence that on December 30, 1950 a check was drawn by Broadway Chevrolet for $15,555 to Properties, Inc., a corporation owned and controlled by the defendant, which bore the notation "Contract new Show Room $15,555—". On the same date another check for $15,410 was drawn to the Middlesex Specialty Co. which bore the notation "contract material for new Show Room." Middlesex Specialty Co. was another corporation controlled by the defendant. Invoices were prepared on the same date by Properties, Inc. and Middlesex Specialty Co. for Broadway Chevrolet. The amount of the two checks was entered in the cash disbursement journal and in the ledger of Broadway Chevrolet as a miscellaneous administration expense. Subsequently in 1951 two new invoices were submitted by Properties, Inc. and Middlesex Specialty Co. In the former's invoice the original $15,555 item was broken down into two separate charges: "Contract:—Misc. expense and maintenance of new show room $11,555, Legal, auditing, & other Professional services, $4,-000." In the latter's invoice the original item of $15,410 was broken down into "Contract:—Maintenance and materials for new show room, $11,910, Legal au-

diting & other Professional Services, $3,500." Corresponding changes were made in the books of Broadway Chevrolet Corporation and these adjusted books were the material upon which the corporate return was prepared by an independent certified public accountant.

Evidence was introduced by the defendant proving that in 1950 an official of the Chevrolet Division of General Motors had informed the defendant that the showroom of Broadway Chevrolet Corporation was neither large enough for their requirements nor was it suitable as far as appearance was concerned because of the presence of a tavern or barroom in front of the building. Before the end of the year the defendant told this official of the Chevrolet Division that he was going to take steps to go ahead with the recommendations. Further evidence was introduced tending to prove that the defendant's franchise was on a year to year basis and could be cancelled for cause upon ninety days notice preceding the end of the contract year. Among the listed causes for cancellation were inadequate facilities and lack of proper conduct of the business on the part of the dealer.

Actual construction of the enlarged showroom did not begin until early in 1952 because the lease of the tenant operating the barroom did not expire until October 1, 1951 and he did not vacate the premises until January 1, 1952. The cost of construction amounted to about $21,000, that part of the $30,965 in ex-cess of the construction cost allegedly being reported as profit by Properties, Inc. and Middlesex Specialty Co. on their returns for the years during which the construction was actually carried out.

The jury was instructed that if they determined that this expenditure was not a proper one year deductible expense and if they further determined that the defendant realized it was not such a deductible expense they could find the defendant guilty of evasion with regard to the tax return of Broadway Chevrolet. Defendant argues that under Section 23 of the Internal Revenue Code of 1939, 26 U.S.C. § 23 [2] and U.S.Treas.Reg. 111, § 29.23(a)-1 and 4 [3] the defendant was clearly justified in treating this expenditure as he did. Defendant utilized the testimony of an expert who testified that the fair market value of the building housing the showroom was decreased from $35,000 to $33,000 or $32,000 following the expenditure for alterations and modernization. The expert based this conclusion on the grounds that the expansion of the showroom caused the loss of the rental from the barroom and as the building became a one purpose building its value would be less even to a person who would be interested in using it as an automobile showroom. This expert further testified that the alterations resulted in space for display of only one or two additional automobiles. The defendant testified that he felt it was an expense as he did not think the expansion would increase car sales, that it

---

2. "§ 23. *Deductions from gross income.* In computing net income there shall be allowed as deductions:

"(a) *Expenses.*

"(1) *Trade or business expenses.*

"(A) *In general.*

"All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, * * *."

3. "29.23(a)-1 *Business expenses.* Business expenses deductible from gross income include the ordinary and necessary expenditures directly connected with or pertaining to the taxpayer's trade or business, * * *."

"29.23(a)-4 *Repairs.* The cost of incidental repairs which neither materially add to the value of the property nor appreciably prolong its life, but keep it in an ordinarily efficient operating condition, may be deducted as expense, provided the plant or property account is not increased by the amount of such expenditures. Repairs in the nature of replacements, to the extent that they arrest deterioration and appreciably prolong the life of the property, should be charged against the depreciation reserve if such account is kept."

would increase fixed overhead and that it would decrease rather than increase the value of the building. The principal reason for the enlargement of the showroom was apparently the defendant's fear that if it were not carried out, his Chevrolet franchise would be cancelled.

Government counsel has been unable to cite any precedent finding criminal liability upon the failure of the taxpayer to properly differentiate between an expenditure for a capital improvement and that which is necessary to keep the property in an ordinarily efficient operating condition. In many cases the distinction between a repair and a capital expenditure is one of very fine degree. See Note 13 Tax L.Rev. 231 (1958).

There have been several Tax Court cases where what would ordinarily be treated as capital improvements were allowed as repairs where their purpose was not to extend the life of the repaired property but rather to prevent that life from being shortened due to unusual circumstances. American Bemberg Corporation, 1948, 10 T.C. 361, Midland Empire Packing Co., 1950, 14 T.C. 635, Illinois Merchants Trust Co., Executor, 1926, 4 B.T.A. 103. Unlike a civil case, in the present criminal prosecution the burden is not upon the defendant to prove the Commissioner was wrong in treating this expenditure as a capital improvement. Rather the burden is upon the government to show there was a tax due.

The defendant presented evidence that was unrebutted by the government that Broadway Chevrolet's expenditure did not add to the value of its property and its main purpose was to retain the franchise. Certainly the Tax Court upon an analysis of these facts could correctly sustain a finding by the Commissioner that a full deduction against current income would not accurately reflect the income of this Corporation. However, in view of Tax Court decisions lending support to the treatment of comparable expenditures as "repairs", we do not believe that the evidence in the instant case allows a jury to infer beyond a reasonable doubt that taking the full deduction in the year when the expense was incurred would result in a false reflection of the income of defendant's Broadway Chevrolet Corporation.

Defendant contends that he was acting within the law when he deducted the $30,965 in 1950 although the construction work was not begun until 1952. There was evidence that the Broadway Chevrolet Corporation was on an accrual basis of accounting while the defendant's individual return was on a cash basis.

As authority for the legal correctness of deducting the expenditure in 1950 the defendant has cited Harrold v. Commissioner of Internal Revenue, 4 Cir., 1951, 192 F.2d 1002 and Bressner Radio, Inc. v. Commissioner, 1957, 28 T.C. No. 40, but in both those cases the cost of repairs, which was susceptible of estimate with reasonable accuracy, was allowed to be deducted against the income derived from the sale of the commodity to which the repairs were directly attributable. In Harrold, for example, the taxpayer mined coal by the strip mining method and thereby incurred a contractual and statutory obligation to refill the lands from which the soil had been removed. This expense of repair was clearly relevant to the determination of the profit derived from the sale of coal mined from the land to be repaired. In the instant case, however, the sale of automobiles in 1950 was in no sense dependent upon construction which would not be carried out until 1952,—to allow this deduction would result in an unrealistic distortion of Broadway Chevrolet's income in 1950.

Here the defendant had a considerable business background including accounting training. The business grossed over one million dollars in sales in 1950 and without the deduction of the $30,965 Broadway Chevrolet would have had to report an income subject to the 42% tax rate. In view of these facts the jury could have inferred that the defendant was aware that by deducting the $30,-965 which he had transferred from Broadway Chevrolet to his other corpo-

rations in 1950 for construction expenses which would neither accrue nor be paid for until 1952, he was not reporting accurately the actual taxable income in 1950 of Broadway Chevrolet.

In conclusion, with regard to the 1950 return filed by the defendant for Broadway Chevrolet, it is our determination that while there was sufficient evidence for the jury to conclude that the taking of the deduction in 1950 rather than in 1952 was improper under the circumstances, there was insufficient evidence for the jury to find that the deduction of $30,965 was improper because the expenditure was for a capital improvement rather than for a necessary business expense. Because the jury was allowed to base its finding of guilt with regard to the corporate return solely on its determination of the latter issue, it becomes necessary to remand the case for a new trial on the indictment relating to the corporate return as well as that relating to the individual return.

The judgments of the district court are vacated, the verdicts are set aside and the case is remanded to that court for a new trial.