T.C. Memo. 2011-10

UNITED STATES TAX COURT

RICHARD H. FRANKE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 17085-08.                    Filed January 11, 2011.

<u>David S. Greenberg</u>, for petitioner.

<u>Kim-Khanh Thi Nguyen</u> and <u>Blake Ferguson</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

COHEN, <u>Judge</u>:  Respondent determined deficiencies, penalties, and an addition to tax as follows:

| Year | Deficiency | Penalty Sec. 6663 | Addition to Tax Sec. 6651(a)(1) |
|------|-----------|-------------------|--------------------------------|
| 2003 | $17,530 | $13,147 | --- |
| 2004 | 25,306 | 18,979 | --- |
| 2005 | 19,355 | 14,516 | $4,838 |

As an alternative to the section 6663 penalty, in the notice, respondent determined an accuracy-related penalty under section 6662. After concessions by petitioner, the sole issue for decision is whether he is liable for the penalties for fraud under section 6663. All section references are to the Internal Revenue Code, and all Rule references are to the Tax Court Rules of Practice and Procedure.

## FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. Petitioner resided in California at the time he filed his petition. Petitioner became a tax return preparer in about 1993 and continued to prepare tax returns until 2009.

During the years in issue, petitioner was an enrolled agent; i.e., a person authorized to practice before the Internal Revenue Service (IRS). During 2004 and 2005, he was president of the Inland Empire Chapter of the California Society of Enrolled Agents.

Petitioner received, but did not report, gross income of $58,578, $79,912, and $65,886 during 2003, 2004, and 2005, respectively. He received the income through a partnership he had formed under the name of Life Structuring Network. Life Structuring Network provided services including tax preparation, bookkeeping, notary, insurance, and sales of nutritional

supplements.  The other partner in the partnership was RichFran House, an alleged "corporation sole".  A corporation sole, under State law, allows a religious leader to hold property and conduct business on behalf of a religious entity.

The Life Structuring Network partnership agreement allocated 100 percent of the profits to RichFran House and 100 percent of the losses to petitioner.  The agreement provided:

Skills Contributed

Each partner named below shall participate by working in the manner described:

Richard Franke will make available his skills in tax preparation and representation as an enrolled agent and in financial planning as an insurance agent.

Richfran House will make available the various skills of its members and the resources of its library.

The partnership's only source of income was services performed by petitioner.  Life Structuring Network did not keep records showing income and expenses of the business activities and did not file Federal partnership returns for the years in issue.

RichFran House was one of three entities petitioner formed after purchasing a corporation sole package from the Freedom and Privacy Committee for $2,295.  The other entities were National Church and National Ministries to Families.  During IRS examinations of certain of petitioner's tax return preparation clients, petitioner provided lists of alleged payments to RichFran House, National Church, and National Ministries to

Families in support of his clients' claimed charitable contribution deductions.  The charitable contribution deductions were disallowed, and the IRS imposed tax return preparer penalties on petitioner and commenced an examination of petitioner's tax liability.

On or about April 14, 2004, petitioner filed a Form 1040, U.S. Individual Income Tax Return, for 2003.  On that return he reported total income of $456 and no tax due.  He did not report any income from Life Structuring Network.  On May 20, 2004, petitioner signed a Uniform Residential Loan Application, by which he applied for a $220,000 mortgage.  On that application, he represented that his employer was Life Structuring Network and that his base monthly income was $5,400.

On March 29, 2004, the IRS issued News Release IR-2004-42 warning taxpayers of a "'Corporation Sole' Tax Scam".  On October 18, 2004, the U.S. District Court for the Central District of California preliminarily enjoined sale of the corporation sole program through the Freedom and Privacy Committee (FPC), finding that the program was an abusive tax shelter.  See United States v. Saladino, 95 AFTR 2d 2005-1236, at 2005-1237, 2007-1 USTC par. 50,289 at 87,658 (C.D. Cal. 2005), affd. 175 Fed. Appx. 812 (9th Cir. 2006).  A permanent injunction was entered January 20, 2005. United States v. Saladino, 95 AFTR 2d 2005-1230 (C.D. Cal. 2005). The findings of the court included the following:

Saladino markets the FPC "corporation sole" arrangement as a means to evade the reporting and payment of federal income taxes, as well as a means to conceal assets and thereby evade estate and inheritance taxes and IRS collection efforts.  Saladino markets the corporation sole package for $2,295.  After receiving a customer's application and payment, Saladino instructs participants how to form a corporation sole, including how to conceal assets and taxable income by transferring assets and income to their corporations sole.

* * * Saladino falsely or fraudulently advises participants that they can treat their corporations sole as a "church" with no tax return filing requirement, and yet can control and use the assets and income of the corporation sole for their own personal benefit.  FPC promotional material states that "this product will position you to have full-time ministry which is tax free."  Saladino advises participants that corporations sole that are used for the participants' personal benefit are tax exempt, do not need to file tax returns of any kind, and do not need to keep records.  Saladino also falsely states that a corporation sole's church status cannot be challenged by the Government.

* * * Saladino further falsely states that participants can make donations to their corporations sole and then deduct the donations on the participants' federal income tax returns (in the event returns are filed), even though the entities are owned and controlled by the participants.

* * * Saladino falsely or fraudulently advises that a participant who becomes the "minister" or "overseer" of the corporation sole and takes a vow of poverty, can assign his income to the corporation sole and thereby transform taxable individual income into nontaxable income of the corporation sole.  According to Saladino, "Once you declare your pauper status, your income is tax-free to you and your assets cannot be encumbered with a property tax."

* * * * * * *

> * * * Saladino falsely or fraudulently touts participating in the corporation sole program as a mechanism that enables participants to drop out of the federal tax system entirely.  The effect of Saladino's scheme is that the participant lives in the same residence and operates the same business activity as he did prior to joining the program.  All living expenses of the participant and his family are paid from compensation earned from the business activity, just as before the creation of the corporation sole.  The participant receives the full benefit of, and has full control over, all corporation sole funds.  The only substantive change in the participants' regular business and lifestyle activities is the alleged benefit of no taxation.

Id. at 2005-1231 to 2005-1232.

On April 15, 2005, petitioner filed a Form 1040 for 2004. He did not report his income from Life Structuring Network on the 2004 return and reported no tax due.  In June or July 2006, an IRS examiner gave petitioner copies of the injunctions against the FPC's corporation sole program.  On October 14, 2006, petitioner filed a Form 1040 for 2005.  He did not report his income from Life Structuring Network and reported no taxable income and no tax due.  In February or March 2007, petitioner admitted to an IRS auditor that he realized that some of the items in his corporation sole package were not correct. Thereafter petitioner filed Forms 1040 for 2006 and 2007 on which he continued to invoke the corporation sole program as an excuse for failing to report his taxable income.

During the audit of petitioner's tax returns, the examiner requested petitioner's bank records.  Because petitioner did not

provide the records, the examiner obtained the records through use of a summons and prepared a bank deposits and cash expenditures analysis for the years in issue. The bank records revealed petitioner's receipt of substantial income from petitioner's tax preparation services and related businesses and payment of petitioner's personal living expenses out of accounts in the names of petitioner's corporations. Examination of the corporation sole bank accounts disclosed no expenditures for religious purposes. Petitioner did not provide records substantiating business expenses that he claimed. Substitutes for returns for 2003, 2004, and 2005 were prepared by the IRS determining the partnership income of Life Structuring Network. In the notice of deficiency that partnership income was allocated to petitioner.

## OPINION

Petitioner testified that he became an ordained minister in 1962. He asserted vaguely phrased objectives of the three entities that he formed using the corporation sole package provided by the FPC. However, he presented no reliable evidence of any religious or charitable activities conducted during the years in issue. During those years, his only apparent activities were secular profit-making businesses, the income from which was used for his personal living expenses.

The addition to tax in cases of fraud is a civil sanction provided primarily as a safeguard for the protection of the revenue and to reimburse the Government for the heavy expense of investigation and the loss resulting from the taxpayer's fraud. Helvering v. Mitchell, 303 U.S. 391, 401 (1938). To sustain the 75-percent addition to tax provided by section 6663, the Commissioner has the burden of proving, by clear and convincing evidence, an underpayment of tax and that the underpayment was due to fraud. Sec. 7454(a); Rule 142(b). This burden is met if it is shown that the taxpayer intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of such taxes. Stoltzfus v. United States, 398 F.2d 1002, 1004 (3d Cir. 1968); Webb v. Commissioner, 394 F.2d 366, 377 (5th Cir. 1968), affg. T.C. Memo. 1966-81.

Petitioner has stipulated his receipt of gross income for each year in the amounts set forth in our findings, and he has conceded that he is not entitled to deduct expenses that he claimed during the audit. Because petitioner failed to present any evidence of offsetting deductions, respondent's burden of proving an underpayment has been met. See, e.g., Brooks v. Commissioner, 82 T.C. 413, 432-433 (1984), affd. without published opinion 772 F.2d 910 (9th Cir. 1985). Respondent does

not have the burden of disproving petitioner's entitlement to deductions, even in a criminal case where the Government bears a heavier burden of proof. See, e.g., Elwert v. United States, 231 F.2d 928, 933-936 (9th Cir. 1956).

Fraud may be proved by circumstantial evidence, and the taxpayer's entire course of conduct may establish the requisite fraudulent intent. Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983). In determining whether petitioner's underpayment was due to fraud, we apply long-recognized "badges of fraud", discussed in cases applying section 6663 or former section 6653(b)(1). See Niedringhaus v. Commissioner, 99 T.C. 202, 211-213 (1992). Circumstantial evidence of fraud present here includes failure to report substantial amounts of income from business activities, failure to file partnership returns, failure to keep records, and giving implausible explanations of behavior. See Bradford v. Commissioner, 796 F.2d 303, 307-308 (9th Cir. 1986), affg. T.C. Memo. 1984-601; Powell v. Granquist, 252 F.2d 56, 60-61 (9th Cir. 1958); Grosshandler v. Commissioner, 75 T.C. 1, 20 (1980); Gajewski v. Commissioner, 67 T.C. 181, 199-202 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978).

Petitioner was a tax return preparer for many years and represented that he researched the tax issues involved here. His business experience is a relevant consideration in determining whether he had fraudulent intent. See Solomon v. Commissioner,

732 F.2d 1459, 1461-1462 (6th Cir. 1984), affg. T.C. Memo. 1982-603; Beaver v. Commissioner, 55 T.C. 85, 93-94 (1970). If he researched the issue, he should have known of the limited use of a corporation sole for the benefit of a legitimate religious organization. Neither reason nor authority permits use of a corporation sole to avoid taxes on income from business activities such as those engaged in by petitioner.

Although petitioner admitted that during the audit he had been shown the injunctions describing the abuses inherent in the corporation sole package that he used, he continued with his course of understating his tax liabilities on the individual tax returns that he filed. He testified at trial in September 2010 that he had never changed his view that his corporate entities were "automatically exempt" and that they were separate from his personal activities. He never identified any activities, however, beyond his personal businesses, which were conducted through a partnership in which one of his allegedly religious entities was a partner. In view of all of the evidence, we do not believe that petitioner's alleged belief is held in good faith. Respondent has proven fraud by clear and convincing evidence, and the additions to tax under section 6663 will be sustained.

To reflect petitioner's concessions and the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.
