T.C. Memo. 2018-173

UNITED STATES TAX COURT

RUDY CASTANEDA AND JULIE CASTANEDA, Petitioners <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 14074-14.                    Filed October 16, 2018.

Rudy Castaneda and Julie Castaneda, pro se.

Trisha S. Farrow, John R. Gordon, Brandon A. Keim, Nora Demirjian,

Najah J. Shariff, and Michael K. Park, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

COHEN, Judge:  Respondent determined a $196,209 deficiency, a

$49,488.25 addition to tax under section 6651(a)(1), and a $147,156.75 penalty

under section 6663 with respect to petitioners' Federal income tax liability for

2008.  Respondent also determined, in the alternative, that petitioners were liable

**[*2]** for an accuracy-related penalty under section 6662(a). All section references are to the Internal Revenue Code in effect for 2008, and all Rule references are to the Tax Court Rules of Practice and Procedure.

After concessions in a stipulation of settled issues filed September 11, 2015, and numerous pretrial skirmishes, petitioners failed to appear for trial. The trial proceeded on April 30, 2018, and the case has been regarded as submitted on behalf of petitioners. See Rule 149(a). Respondent presented evidence of unreported income and a resulting underpayment of tax due to fraud on the part of both petitioners. The issues for decision are (1) whether petitioners received and failed to report $200,381.18 of income embezzled from Centro De Amistad, Inc. (Centro); (2) whether petitioners are entitled to deduct $295,871 of gambling losses; (3) whether petitioners are liable for self-employment tax on Rudy Castaneda's (R. Castaneda) income from Centro; (4) whether petitioners are liable for the section 6663 fraud penalty or, in the alternative, the section 6662 accuracy-related penalty; and (5) whether petitioners are liable for the section 6651(a) addition to tax.

[*3]                      FINDINGS OF FACT

Some of the facts have been stipulated and some have been deemed stipulated pursuant to Rule 91(f).  Petitioners resided in California at the time they filed their petition.

Centro was a nonprofit agency that provided treatments for drug and alcohol addiction, impaired driving classes, and services for youth and chronically mentally ill in the community of Guadalupe, Arizona.  Centro and several other similar organizations formed the People of Color Network to centralize fundraising efforts for the agencies involved and to coordinate funding and services provided.  Virtually all of Centro's funding came from Government grants or charitable donations.

Santino Bernasconi served as the director of Centro from 1988 until May 2010.  Centro historically experienced periodic financial difficulties, particularly with respect to cashflow, due to the gap between funding receipts and obligations for bills and payroll.  Centro maintained a checking account at Bank of America and used an American Express card to make purchases for supplies.  Because Centro did not have enough credit to obtain a credit card in its name, Centro used Bernasconi's personal American Express card.  By 2007 and in 2008, Centro's

[*4] income had stabilized and increased, so that it could pay its bills and staff on time and offer expanded services.

In 1991 petitioner Julie Castaneda (J. Castaneda) was hired as an administrative assistant and bookkeeper for Centro. J. Castaneda's duties included paying Centro's bills, issuing payroll checks, reviewing bank statements, performing administrative duties, and maintaining Centro's books and records. Until 2005 or 2006, J. Castaneda would provide Bernasconi with a billing statement or bill accompanied by a check prepared for Bernasconi's signature. In 2005 or 2006 Bernasconi began experiencing health problems. He created a stamp of his signature for J. Castaneda to use on checks for Centro's bills.

R. Castaneda began working for Centro in 2005 as a part-time therapist on an independent contractor basis. He and other part-time therapists were paid on the basis of invoices for services they provided.

J. Castaneda was authorized to use Bernasconi's credit card to purchase items for Centro. She was never authorized to use the American Express card for her personal expenses. She was never authorized to write checks on Centro's bank account to herself or to R. Castaneda for personal expenses.

During 2008 J. Castaneda had unrestricted access to Centro's funds and maintained possession of the rubber stamp of Bernasconi's signature. During

[*5] 2008 J. Castaneda wrote checks totaling $189,330.97 to herself from Centro's bank account. She also received wages from Centro in the form of checks totaling $28,645.12 from Centro's payroll company. During 2008 she cashed checks payable to herself from Centro totaling $217,976.09. Most of the checks were cashed at Guadalupe Market, a small neighborhood convenience store across the street from Centro. During 2008 R. Castaneda cashed checks payable to himself from Centro totaling $64,097.71.

In July 2008 Bernasconi received information that payroll checks issued by Centro were bouncing and that J. Castaneda had warned other Centro employees to keep quiet about Centro's financial difficulties. Bernasconi confronted J. Castaneda and fired her. Bernasconi hired a certified public accountant (C.P.A.) to review Centro's books and records. The C.P.A. prepared a report disclosing that from January 2007 through July 2008 unauthorized disbursements from Centro's account totaled $252,723.03. Bernasconi also discovered that J. Castaneda had charged personal expenses, including flights to Las Vegas, to his American Express card. Bernasconi filed suit against petitioners for the unauthorized use of his credit card and received a default judgment in the Superior Court of Maricopa County, Arizona, on July 8, 2009.

**[*6]**   During 2008 petitioners were frequent gamblers at Casino Arizona.  They did not keep a contemporaneous log of their gambling winnings or losses, and they did not consistently use player's cards by which Casino Arizona would track all of a patron's winnings and losses.

Gambling winnings over a certain threshold were regularly reported by Casino Arizona on Forms W-2G, Certain Gambling Winnings, to the Internal Revenue Service (IRS).  From January 1 through July 13, 2008, Casino Arizona issued 166 Forms W-2G to J. Castaneda reflecting winnings of $316,505.  Casino Arizona issued Forms W-2G to R. Castaneda reflecting winnings of $7,722 from January 1 to July 14, 2008.  Additional winnings of petitioners were not reported if they did not exceed the threshold amounts for particular games played.

Petitioners' 2008 Federal income tax return was due April 15, 2009, but was not filed until September 23, 2011.  Petitioners prepared their own return.  They reported J. Castaneda's wages of $28,645.12.  They did not report any income earned by R. Castaneda.  They reported $295,871 in gambling winnings and claimed a deduction of $295,871 in gambling losses.  They failed to report unemployment compensation of $4,560, pension and annuity income of $7,042, and additional gambling income of $30,856.  They did not report any income from

[*7] the unauthorized checks written on Centro's bank account or the use of Bernasconi's American Express card for their personal expenses.

On September 17, 2012, petitioners filed a bankruptcy petition in the U.S. Bankruptcy Court for the District of Arizona. As a result of this filing Bernasconi never received any payment on the judgment he had obtained against petitioners.

During an examination of petitioners' 2008 tax return J. Castaneda failed to produce documents requested by the examining agent, falsely denied that petitioners maintained a bank account, denied having received any money from Centro other than J. Castaneda's reported wages, and denied using any funds other than those wages and gambling winnings to gamble. The examining agent summoned Centro's bank records and identified 161 checks payable to either petitioner that were cashed in 2008. The examiner concluded that J. Castaneda had embezzled funds from Centro. She determined that R. Castaneda's payments received as an independent contractor were subject to self-employment tax. In protesting the examining agent's findings, J. Castaneda claimed under oath that other Centro employees had cashed checks made out in her name and that the "checks [were] made out with the CEO's approval". After the examination was completed, petitioners sent a letter to the IRS threatening to sue the examining agent.

**[\*8]**   The examining agent made the initial determination to assert the section 6663 fraud penalty or, in the alternative, the section 6662 penalty.  Her determination was approved in writing by her immediate supervisor before the issuance of the notice of deficiency.

OPINION

In the petition filed June 16, 2014, petitioners claimed that the amounts here in dispute were discharged in bankruptcy and made various claims of misconduct by respondent.  Over the several years between the filing of the petition and the time of trial, they made various accusations against Centro and its other employees, the examining agent, respondent's lawyers, and, ultimately, the Judge who had attempted to aid the parties in negotiating the stipulation and otherwise preparing for trial or other resolution.  Petitioners conceded minor items of unreported income, but they never explained the specific items of embezzlement income included in the examining agent's analysis of bank records.

After several delays the case was set for trial on April 30, 2018, by notice served November 20, 2017.  On March 19, 2018, petitioners filed a motion for continuance, which was denied March 20, 2018.  Petitioners failed to appear for trial, having notified respondent's counsel on March 27, 2018, that they would not be attending.  Petitioners neither notified the Court that they did not intend to

[*9] appear nor provided any excuse for nonappearance. All issues on which petitioners have the burden of proof may be decided against them by reason of their failure to present evidence. See Rule 149(b). Respondent's posttrial brief was served on petitioners, but they have not responded or participated in any way since approximately a month before trial.

Under section 61(a) gross income is defined as "all income from whatever source derived". It has long been established that gross income for tax purposes includes unlawful earnings. When a taxpayer acquires embezzlement proceeds, without the consensual recognition of an obligation to repay and without restriction as to disposition, he or she has income that must be reported. James v. United States, 366 U.S. 213, 219 (1961). As described in our findings and discussed below in relation to the fraud penalty, respondent has proven that petitioners received and did not report embezzlement income of over $200,000 by cashing unauthorized checks drawn on Centro's bank account. Petitioners conceded other items of unreported income in the stipulation of settled issues.

Petitioners have the burden of proving entitlement to deductions, such as the gambling losses claimed on their belatedly filed 2008 return, and that the determination that they are liable for self-employment tax on R. Castenada's earnings is erroneous. See Rule 142(a). Petitioners failed to keep records of their

[*10] gambling winnings and precluded creation of reliable casino records by failing to use player's cards.  They did not provide any documentation to substantiate any gambling losses, and they did not appear at trial to testify about the claimed losses.  Therefore, we have no basis to allow any of those deductions.

Petitioners conceded $53,047.50 in unreported income apparently received for R. Castaneda's independent contractor services provided to Centro during 2008.  They have offered neither evidence nor argument that his earnings are not subject to self-employment tax.  R. Castaneda's earnings are subject to self-employment tax under sections 1401 and 1402.

At trial respondent presented credible and uncontroverted testimony from Bernasconi, from a representative of Casino Arizona, from a representative of Guadalupe Market, and from the examining agent.  The testimony established that: unauthorized checks drawn on Centro's bank account and cashed by petitioners exceeded $200,000; not all of petitioners' gambling income was reported because they did not consistently use player's cards that would create records of wins and losses; they regularly cashed checks at Guadalupe Market after assuring that large amounts of cash would be available for that purpose; and J. Castaneda made false statements during the course of the examination, failed to provide requested

**[\*11]** documents, and threatened to sue the examining agent after the examination report was completed.

The fraud penalty is a civil sanction provided primarily as a safeguard for the protection of the revenue and to reimburse the Government for the heavy expense of investigation and the loss resulting from the taxpayer's fraud. See Helvering v. Mitchell, 303 U.S. 391, 401 (1938). The Commissioner has the burden of proving fraud by clear and convincing evidence. Sec. 7454(a); Rule 142(b).

To impose the 75% penalty provided by section 6663, the Commissioner has the burden of proving for each relevant year (1) an underpayment of tax and (2) that the underpayment was due to fraud. See, e.g., May v. Commissioner, 137 T.C. 147, 151 (2011), aff'd per order, 2013 WL 1352477 (6th Cir. Feb. 19, 2013); Sadler v. Commissioner, 113 T.C. 99, 102 (1999); Parks v. Commissioner, 94 T.C. 654, 660-661 (1990). The latter burden is met if it is shown that the taxpayer intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of such taxes. DiLeo v. Commissioner, 96 T.C. 858, 874 (1991), aff'd, 959 F.2d 16 (2d Cir. 1992). The Commissioner must also establish compliance with section 6751(b). Graev v. Commissioner, 149 T.C. __, __ (slip op. at 14) (Dec. 20, 2017), supplementing

[*12] and overruling in part 147 T.C. 460 (2016). If the Commissioner establishes that any portion of the underpayment is attributable to fraud, the entire underpayment is treated as attributable to fraud and subjected to a 75% penalty, unless the taxpayer establishes by a preponderance of evidence that some part of the underpayment is not attributable to fraud. Sec. 6663(b).

By testimony and documentary exhibits respondent has proven by clear and convincing evidence that petitioners omitted from the income reported on their late-filed return over $200,000 in income and that the omitted income was primarily attributable to embezzlement of funds from Centro. In the absence of any evidence of offsetting deductions or nonincome items, the unreported income necessarily resulted in an underpayment of tax. Once the receipt of income is shown it is petitioners' burden to come forward with explanations of why receipts are not taxable or evidence of offsetting deductions. See, e.g., Brooks v. Commissioner, 82 T.C. 413, 432-433 (1984), aff'd without published opinion, 772 F.2d 910 (9th Cir. 1985). Respondent does not have the burden of disproving petitioners' entitlement to deductions, even in a criminal case where the Government bears a heavier burden of proof. See, e.g., Elwert v. United States, 231 F.2d 928, 933-936 (9th Cir. 1956). The testimony and documentary exhibits

**[\*13]** also satisfied respondent's burden of establishing compliance with section 6751(b).

As to the Commissioner's burden of proving intent to evade taxes, fraud may be proven by circumstantial evidence, and the taxpayer's entire course of conduct may establish the requisite fraudulent intent. Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983). In determining whether petitioners' underpayment was due to fraud, we apply long-recognized "badges of fraud" evolved from cases analyzing section 6663 or former section 6653(b)(1). See, e.g., Niedringhaus v. Commissioner, 99 T.C. 202, 211 (1992). In Bradford v. Commissioner, 796 F.2d 303, 307-308 (9th Cir. 1986), aff'g T.C. Memo. 1984-601, for example, those badges of fraud were listed, with numerous citations, as: understatement of income, inadequate records, failure to file tax returns, implausible or inconsistent explanations of behavior, concealing assets, and failure to cooperate with tax authorities. Dealing in cash is considered a badge of fraud because it is indicative of a taxpayer's attempt to avoid scrutiny of his or her finances. Id. at 308. Misstatements during an audit, even by an unsophisticated taxpayer, may support a finding of fraud. See, e.g., Ruark v. Commissioner, 449 F.2d 311 (9th Cir. 1971), aff'g T.C. Memo. 1969-48. Engaging in illegal activities, such as embezzlement,

**[*14]** is a badge of fraud.  Bradford v. Commissioner, 796 F.2d at 308; Recklitis v. Commissioner, 91 T.C. 874, 910 (1988).

All of the foregoing badges of fraud have been shown by clear and convincing evidence in this case except failure to file tax returns.  Petitioners' return, however, was filed over two years late and omitted substantial amounts of income from legal sources as well as from embezzlement.  Moreover, petitioners have offered no reasonable cause for the late filing of their return.  Thus we conclude that petitioners are each liable for the fraud penalty under section 6663 and the late-filing addition to tax under section 6651(a).  See sec. 6651(a)(1) (imposing an addition to tax in the case of a late-filed return unless the late filing is due to reasonable cause and not to willful neglect).

To take account of the stipulation of settled issues and other concessions,

Decision will be entered

under Rule 155.