T.C. Memo. 2011-192

UNITED STATES TAX COURT

ARMANDO SANDOVAL LUA AND YADIRA A. SANDOVAL, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 14661-09.                    Filed August 11, 2011.

<u>Sean H. Colon</u>, for petitioners.

<u>Kimberly A. Kazda</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

VASQUEZ, <u>Judge</u>:  Respondent determined a $54,674 deficiency

in petitioners' Federal income tax for 2005.  After concessions,[1]

---

[1] Petitioners concede that they failed to report rents received of $5,700 on their Schedule E, Supplemental Income and Loss.  Petitioners further concede that the deduction for other expenses claimed on their Schedule C, Profit or Loss From Business, should be reduced by $140,221, and the mortgage interest deduction claimed on their Schedule C should be reduced by $1,882.

(continued...)

the issue for decision is whether petitioners failed to report $19,207 of income on their Schedule C, Profit or Loss From Business, for Future Satellite Communications (Future Satellite).[2]

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulations of facts and the attached exhibits are incorporated herein by this reference. Petitioners resided in California when they filed their petition. Petitioners are husband and wife (hereinafter referred to individually as Mr. Sandoval Lua and Mrs. Sandoval, respectively) who filed a joint tax return for the 2005 tax year.

Mr. Sandoval Lua owns Future Satellite, a residential satellite installation business. He operates Future Satellite as a sole proprietorship, and petitioners report its income and expenses on a Schedule C. Mr. Sandoval Lua oversees the services

---

[1](...continued)
Respondent concedes that petitioners' Schedule C depreciation expense should be increased by $4,426 and their Schedule E depreciation or depletion expense increased by $1,649. Respondent also concedes that petitioners' Schedule E mortgage interest expense should be increased by $4,673.
The parties agree that petitioners' $1,287 expense for taxes and licenses claimed on their Schedule C should have been reported on their Schedule E.

[2] Respondent's determinations with respect to petitioners' itemized deductions and self-employment tax are computational adjustments that will be resolved by our decision on the primary issue.

side of the business, and Mrs. Sandoval performs the administrative functions such as bookkeeping, ordering equipment, and depositing checks.

In 2005 Future Satellite provided installation services on behalf of DIRECTV, Dish Network, and Recreational Sports and Imports (RS&I) (collectively, the satellite companies). During the year Mr. Sandoval Lua retained the services of five or six individuals (the installers) to perform the installations for Future Satellite.[3] Future Satellite compensated the installers for each installation they performed.

Compensation From the Satellite Companies

Future Satellite received two forms of compensation from the satellite companies: (1) Residuals and (2) equipment reimbursement. With respect to the residuals, the satellite companies paid Future Satellite a small percentage of each Future Satellite customer's monthly service bill.[4] The satellite companies also reimbursed Future Satellite for the cost of the equipment Future Satellite had purchased and installed. With the exception of two checks received from DIRECTV, the satellite

_____

[3] The installers are independent contractors, and Future Satellite issued them Forms 1099-MISC, Miscellaneous Income.

[4] For example, Mr. Sandoval Lua explained that if a customer's monthly service bill was $50, Future Satellite would receive $1.50 per month.

companies deposited electronically into one of petitioners' bank accounts[5] all of Future Satellite's compensation.

Compensation Collected From Customers

Future Satellite also received compensation from its customers when the installers performed certain installation services (additional services).  The installers collected the fees for the additional services from the customers upon completion of the work.  If the customers paid for the additional services in cash, Future Satellite allowed the installer who performed the additional services to keep the cash (up to the amount Future Satellite compensated the installer for the job), as his compensation for services rendered.[6]  If the customers paid for the additional services by check or the installer received cash in excess of his compensation, the installer brought the checks and/or excess cash to Future Satellite's office.  Petitioners then deposited the checks and/or cash into

---

[5]  RS&I and DIRECTV deposited Future Satellite's compensation electronically into petitioners' Wells Fargo business checking account.  Dish Network deposited Future Satellite's compensation electronically into petitioners' Yolo Federal Credit Union business checking account.

[6]  It is not clear how much Future Satellite compensated the installers for the additional services.

one of their bank accounts[7] and issued the installer a check in the amount of his or her remaining compensation.

Petitioners' 2005 Return and the IRS's Adjustment for Unreported Gross Receipts

Petitioners' return preparer prepared petitioners' Schedule C based on a workpaper Mrs. Sandoval created and the checks petitioners issued to the installers to complete their compensation. The workpaper, which petitioners introduced at trial, listed all deposits made electronically by the satellite companies and all deposits made by Mr. Sandoval Lua or Mrs. Sandoval after receiving the checks and/or cash from the installers after the installers had performed additional services.[8] Petitioners' return preparer totaled the deposits listed on Mrs. Sandoval's workpaper and reported these amounts on petitioners' Schedule C.[9] Because Future Satellite allowed the installers to keep as their compensation some of the cash they

---

[7] Future Satellite deposited the checks and excess cash into either their: (1) Yolo Federal Credit Union personal checking account; (2) Yolo Federal Credit Union personal savings accounts; or (3) Wells Fargo business checking account.

[8] Mrs. Sandoval created the workpaper by going down each of petitioners' monthly bank statements line by line and entering Future Satellite's deposits in a separate document.

[9] Mrs. Sandoval's workpaper showed that Future Satellite had gross income of $995,438, and petitioners' return preparer reported that Future Satellite had gross receipts of $933,448 and other income of $63,627. Petitioners reported higher gross income on their return than stated on Mrs. Sandoval's workpaper because the totals on the workpaper accounted for customer reimbursements made after petitioners had filed their return.

collected after performing additional services, these amounts were not deposited into petitioners' bank accounts and therefore not reported on petitioners' Schedule C. However, petitioners calculated Future Satellite's allowable deduction for compensation paid based on the checks issued to the installers, not the total amount the installers received in cash and checks.[10] Thus, petitioners did not deduct the amounts of cash the installers kept as their compensation.

In 2006 IRS Revenue Agent Terry Gann (Mr. Gann) audited petitioners' 2005 tax return. During their initial meeting Mr. Gann reviewed the invoices Future Satellite issued to its customers after providing additional services. The invoices showed that Future Satellite earned $19,207 for the additional services.[11] Mr. Gann concluded, on the basis of his discussions

---

[10] If a customer paid an installer by check, the installer would deliver the check to Mr. Sandoval Lua or Mrs. Sandoval, who would then deposit it (and report it as income) and issue the installer a check to compensate him for his services (and include the amount in Future Satellite's allowable deduction for compensation paid).

[11] The invoices are not part of the record, and the record does not show how much of the $19,207 was collected in cash or by check. Respondent informally requested that petitioners provide him with copies of the invoices, but petitioners refused. On Apr. 27, 2010, 1 week before trial, respondent served on petitioners a subpoena duces tecum requiring petitioners to bring the invoices with them to trial. On May 3, 2010, petitioners filed a motion to quash subpoena, which the Court granted.

with Mr. Sandoval Lua,[12] that petitioners did not report as income the $19,207 that Future Satellite earned for the additional services. Mr. Gann did only a cursory review of petitioners' bank statements to see whether the amounts collected by the installers had been deposited.

OPINION

## I. <u>Burden of Proof</u>

Generally, the Commissioner's determination of a deficiency is presumed correct, and the taxpayer has the burden of proving it wrong. Rule 142(a);[13] <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933). However, in unreported income cases, the presumption of correctness does not attach unless the Commissioner first establishes some evidentiary foundation linking the taxpayer with the alleged income-producing activity.[14] See <u>Weimerskirch v.</u>

---

[12] See <u>infra</u> p. 9.

[13] Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[14] Although <u>Weimerskirch v. Commissioner</u>, 596 F.2d 358 (9th Cir. 1979), revg. 67 T.C. 672 (1977), dealt specifically with illegal unreported income, it is now well established that the Court of Appeals for the Ninth Circuit applies the <u>Weimerskirch</u> rule in all cases of unreported income where the taxpayer challenges the Commissioner's determination on the merits. E.g., <u>Edwards v. Commissioner</u>, 680 F.2d 1268, 1270 (9th Cir. 1982) (in that case, involving unreported income from an income-generating auto repair business owned by the taxpayer, the court stated: "We note, however, that the Commissioner's assertion of deficiencies are presumptively correct once some substantive evidence is introduced demonstrating that the taxpayer received
(continued...)

<u>Commissioner</u>, 596 F.2d 358 (9th Cir. 1979), revg. 67 T.C. 672 (1977); <u>Golsen v. Commissioner</u>, 54 T.C. 742, 756-757 (1970), affd. 445 F.2d 985 (10th Cir. 1971); <u>Laszloffy v. Commissioner</u>, T.C. Memo. 2010-258.  The requisite evidentiary foundation is minimal.  See <u>Banister v. Commissioner</u>, T.C. Memo. 2008-201, affd. 418 Fed. Appx. 637 (9th Cir. 2011).

> The Ninth Circuit has made it clear * * * that once the government has carried its initial burden of introducing some substantive evidence linking the taxpayer with income-producing activity, the taxpayer has the burden to rebut the presumption of correctness of respondent's deficiency determination by establishing by a preponderance of the evidence that the deficiency determination is arbitrary or erroneous.  * * *

<u>Petzoldt v. Commissioner</u>, 92 T.C. 661, 689 (1989); see also <u>Hardy v. Commissioner</u>, 181 F.3d 1002, 1004 (9th Cir. 1999), affg. T.C. Memo. 1997-97; <u>Rapp v. Commissioner</u>, 774 F.2d 932, 935 (9th Cir. 1985).

Respondent has established the requisite evidentiary foundation linking petitioners with an income-producing activity, Future Satellite.  Consequently, respondent has met his burden of connecting petitioners with the unreported income determined in the notice of deficiency, and respondent's determination is presumed to be correct.

---

[14](...continued)
unreported income.  <u>Weimerskirch v. Commissioner</u>, 596 F.2d 358, 360 (9th Cir. 1979).").

II.  Analysis

    A.    Fees Collected by the Installers and Returned to
          Petitioners

The installers brought the checks and any cash received in
excess of the amount they kept as their compensation to Future
Satellite's office.  Petitioners contend that they reported these
amounts on their Schedule C because they deposited the checks and
cash into one of their bank accounts and their return was based
on the workpaper Mrs. Sandoval created listing all deposits
related to Future Satellite.  Respondent argues that Mr. Sandoval
Lua admitted to Mr. Gann that petitioners did not report as
income any of the $19,207 Future Satellite earned for the
additional services[15] and petitioners have not provided any
documentation to support their argument that they deposited the
checks and cash the installers brought them and then reported
those amounts on their Schedule C.

Petitioners both credibly testified that they deposited the
checks and cash given to them by the installers into one of their

_____

[15]  Mr. Sandoval Lua and Mr. Gann have different
recollections of what was said during their meetings.  Mr.
Sandoval Lua claims that he told Mr. Gann he was unsure whether
petitioners had reported as income the $19,207 Future Satellite
earned for the additional services (he later explained to Mr.
Gann that petitioners deposited and reported the portion of the
$19,207 the installers collected for the additional services and
brought to Future Satellite's office, i.e., the amounts the
installers did not keep as their compensation).  Mr. Gann claims
that Mr. Sandoval Lua stated that petitioners did not report as
income any of the $19,207 Future Satellite earned for the
additional services.

bank accounts. At trial they provided monthly statements from each of their bank accounts showing each deposit made as well as the workpaper Mrs. Sandoval created and later provided to petitioners' return preparer listing all of Future Satellite's deposits. Petitioners' bank statements, when viewed alongside Mrs. Sandoval's workpaper, confirm that Mrs. Sandoval listed each of Future Satellite's deposits on the workpaper she prepared for petitioners' return preparer. Additionally, comparing the amounts on Mrs. Sandoval's workpaper with the gross receipts and other income reported on petitioners' Schedule C establishes that petitioners' return preparer reported all of the amounts listed on Mrs. Sandoval's workpaper on petitioners' return.[16]

Accordingly, petitioners have provided sufficient evidence to prove that they deposited the checks and excess cash into one of their bank accounts and later reported these amounts on their Schedule C.

B.   Cash Kept by the Installers as Compensation for Services Rendered

Petitioners admit that they did not report as income the cash portion of the $19,207 that Future Satellite earned for the additional services and allowed the installers to keep as their compensation. They argue, however, that they did not deduct as compensation paid the amounts of cash the installers kept as their compensation, and therefore any increase in income should

---

[16]   See *supra* note 9.

be offset by the unclaimed deduction for compensation paid. Respondent counters that petitioners cannot substantiate the exact amount of the cash the installers kept as their compensation for services rendered.

Taxpayers bear the burden of coming forward with evidence as to the amount of offsetting expenses, if any. See Rule 142(b); Elwert v. United States, 231 F.2d 928, 933 (9th Cir. 1956); Lenihan v. Commissioner, T.C. Memo. 2006-259; Temple v. Commissioner, T.C. Memo. 2000-337, affd. 62 Fed. Appx. 605 (6th Cir. 2003). When taxpayers establish that they have incurred deductible expenses but are unable to substantiate the exact amounts, we can estimate the deductible amounts, but only if the taxpayers present sufficient evidence to establish a rational basis for making the estimates. See Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930); Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985). In estimating the amount allowable, we bear heavily upon the taxpayer whose inexactitude is of his or her own making. See Cohan v. Commissioner, supra at 544.

Petitioners have established that the cash Future Satellite earned and allowed the installers to keep constituted the installers' compensation for additional services rendered and therefore was an ordinary and necessary trade or business expense deductible under section 162(a)(1). Respondent is correct that petitioners cannot determine exactly how much of the $19,207 they

allowed the installers to keep as their compensation for services rendered; however, based on the record petitioners have proved that they would be entitled to an offsetting deduction in the exact amount of the portion of the $19,207[17] kept by the installers as their compensation.  Accordingly, petitioners have shown that they incurred unclaimed offsetting deductible expenses in the exact amounts of the income they failed to report and therefore owe no tax on the unreported income.[18]

In reaching our holdings herein, we have considered all arguments made, and, to the extent not mentioned above, we conclude they are moot, irrelevant, or without merit.  To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.

---

[17]  We note that $19,207 is less than 1 percent of Future Satellite's reported gross income of $995,438.

[18]  Petitioners' failure to report the additional amount as income does not result in an increase in self-employment tax. Self-employment tax is imposed on self-employment income, which is the net earnings from a trade or business less allowable deductions under sec. 162.  See secs. 1401 and 1402.